### In the United States Court of Federal Claims
No. 14-280 C
(Filed Under Seal: August 29, 2014)
(Reissued for Publication: September 15, 2013)

| | |
|---|---|
| KVICHAK MARINE INDUSTRIES, INC., | ) ) |
| Plaintiff, | ) |
| v. | ) Bid Protest; Motions for Judgment on ) the Administrative Record; Patent |
| THE UNITED STATES, | ) Ambiguity; Technical Evaluation; Best |
| Defendant, | ) Value. |
| and | ) ) ) |
| BIRDON AMERICA, INC., | ) |
| Intervenor. | ) |

*William A. Shook*, Seattle, Washington, for plaintiff.

*Martin M. Tomlinson*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom appeared *Stuart F. Delery*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Stephen J. Gillingham*, Assistant Director, for defendant. *Stephanie Magnell*, Trial Attorney.

*W. Jay DeVecchio*, Washington, D.C., for intervenor.

### OPINION

**Merow**, *Senior Judge*

This bid protest is currently before the court for the resolution of five motions: Kvichak Marine Industries, Inc.'s ("Kvichak") motion seeking preliminary and permanent injunctions, Doc. 2; a motion for judgment on the administrative record from each of the three parties, Docs. 21, 23, and 24; and the government's motion to strike exhibits Kvichak submitted in support of its motion for judgment on the administrative record, Doc. 22.

I.  **INTRODUCTION**

Kvichak filed the instant post-award protest challenging the award of a contract for the government's purchase of Bridge Erection Boats ("BEB") to Birdon America, Inc. ("Birdon"). *See* Doc. 1.

The government issued solicitation number W56HZV-12-R-0445 for the production of BEBs on January 25, 2013. AR at 50, 57. As explained in the solicitation, the purpose of BEBs is as follows:

> The BEBs [sic] primary mission is to support tactical float bridge and rafting operations while operating on Jet Propellant (JP)-8 fuel. The BEB must be rapidly deployed from its transporter launch/retrieval platform, and maneuver float rafts or bridges. The BEB must also support diving operations, transport personnel, and act as a water safety vessel.

AR at 57. The solicitation stated that a firm fixed price contract would be awarded to the offeror who offered the best value to the government. AR at 230.

Each proposal was reviewed by a Source Selection Evaluation Board ("SSEB"), and a Source Selection Advisory Council ("SSAC"), but the awardee was ultimately selected by the designated Source Selection Authority ("SSA"). AR at 231.

The government first decided which proposals were acceptable, and those deemed acceptable were then more thoroughly scrutinized. *See* AR at 231-232. The acceptable proposals were evaluated on four factors: (1) technical, (2) price, (3) data rights, and (4) small business participation. *See* AR at 232. Each proposal was then subjected to a best value tradeoff analysis. *See id.* The solicitation specified that the non-price factors were more important than the price. *See id.*

This protest focuses on the evaluation of the technical merits of Kvichak's proposal versus the technical merits of Birdon's proposal. The technical factor was divided into three parts for analysis: (1) reliability, (2) conventional rafting speed, and (3) forward top speed. *See* AR at 232.

On March 25, 2013, the government received five proposals in response to the solicitation, including the two proposals at issue here.[1] *See* Doc. 23 at 12. The SSEB evaluated each proposal, and assigned the technical ratings used in determining which proposal offered the best value to the government. *See id.* Kvichak's proposal was rated "good" for reliability, "good" for conventional rafting speed, and "outstanding" for forward top speed. AR at 5818-5846. Birdon's proposal was rated "outstanding" for reliability, "outstanding" for conventional rafting speed, and "good" for forward top speed. AR at 5001-5028.

The SSAC reviewed the SSEB's findings, and issued its report on November 13, 2013. *See* AR at 306-330. In its report, the SSAC compared Kvichak's and Birdon's proposals, and found "meaningful distinctions" between them on all three technical factors. AR at 320, 322. The SSAC noted that Birdon's proposal was "significantly more advantageous" to the government, particularly considering its superior presentation on reliability and rafting speed. AR at 323. The SSA ultimately agreed that, despite the fact that Birdon's proposal was more expensive, it offered the best value to the government. AR at 304-05.

Kvichak now claims that the government both incorrectly and unfairly applied the terms of the solicitation as to all three aspects of the technical evaluation. *See* Doc. 1.

## II. MOTION TO STRIKE

As a preliminary matter, the government has asked the court to exclude three exhibits that Kvichak attached to its motion for judgment on the administrative record, on the grounds that the exhibits are not part of the administrative record, and that the documents are inadmissible expert testimony. *See* Doc. 22. All three exhibits are technical in nature, with the first two discussing various aspects of hydraulic systems, *see* Doc. 21-3 at 1-18; Doc. 32 at 2-3, and the third explaining the Brinnel scale, which rates the hardness of various substances, *see* Doc. 21-3 at 21; Doc. 32 at 3.

Kvichak acknowledges that the articles are not part of the administrative record, *see* Doc. 32 at 2-3, but argues that the court should take judicial notice of the facts in these articles under the portion of Federal Rule of Evidence 201 that states: "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources

---

[1] Kvichak submitted two separate proposals, referred to as KVA and KVB. Only KVA is at issue in this protest. *See* Doc. 21-2 at 12 n.3.

whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2); Doc. 32 at 1.

Under the Federal Circuit's decision in *Axiom Resource Management, Inc. v. United States*, judicial review of an administrative record should focus on "the administrative record already in existence, not some new record made initially in the reviewing court." 564 F.3d 1374, 1379 (2009) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). That is not to say that a court can never consider extra-record documents, but "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).

Kvichak has established neither that the articles it submitted are properly the subject of judicial notice, nor that they are necessary for the court's review of this case. Kvichak failed to provide the court with any evidence of the accuracy or credibility of the exhibits it attached to its motion. And there is nothing apparent on the face of exhibits themselves that suggest such reliability—they are simply printouts of information from websites that have no force of authority to the court's knowledge. As such, the court will not take judicial notice of the facts contained in the exhibits.

Even assuming that the websites were sufficiently authoritative to warrant judicial notice of the posted information, the court finds that the information that Kvichak urges the court to consider is unnecessary, and therefore improper, to the court's review of this matter. Kvichak attempts to use the exhibits to challenge the government's substantive, technical decisions. Doc. 21-2 at 14-16 (arguing that the government did not properly assess changes to Birdon's hydraulic system); Doc. 21-2 at 18-19 (arguing that the government did not properly credit the changes it made to its hydraulic system). An evaluation of such decisions falls outside the purview of this court. *Textron, Inc. v. United States*, 74 Fed. Cl. 277, 286 (Fed. Cl. 2006) ("technical ranking decisions made by the agency are 'minutiae of the procurement process . . ., which involve discretionary determinations of procurement officials that a court will not second guess'") (quoting *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996)).

The government's motion to strike is, therefore, **GRANTED**.

## III. MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

The plaintiff, the government, and the intervenor have each filed a motion for judgment on the administrative record. *See* Docs. 21, 23, and 24. Because each motion raises the same issues, the following decision applies equally to all three.

### A. Standard of Review

"In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law and, if so, whether the error is prejudicial." *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907-08 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706)); *see Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The court must decide whether: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009).

As the Federal Circuit has explained:

> When a challenge is brought on the first ground, . . . contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process. Accordingly, the test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)(internal quotation marks and citations omitted).

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

### B. Kvichak's Challenge to the Terms of the Solicitation

Kvichak bases its protest primarily on the fact that the government rated Birdon's proposal as "very low risk" with regard to two important components—the hydraulic system and the water jet impeller's gear ratio. *See* Doc. 21-2 at 12-17. Kvichak alleges that the low risk ratings were unwarranted, and violated the terms of the solicitation, because the two configurations in Birdon's proposal were not supported with test data. *See* Doc. 21-2 at 4-5.

In support of its argument that the government improperly assigned a low risk rating to the untested configurations, Kvichak focuses on two isolated provisions of the solicitation. The first states: "During the source selection for the Production Phase contract, any offeror proposing BEB solutions reflecting untested and/or un-validated designs, or only partially tested design, will be evaluated at higher risk." AR at 1213 § A.2. The second states: "A lack of test data for the proposed configuration/components will be considered higher risk." *Id.* at 1388-89 § M.8.3.

Kvichak contends that the mandatory nature of these statements should have prevented the government from rating Birdon's design at the lowest risk level. "Based on the explicit terms of the solicitation under which all offerors were to compete, the government did not have the discretion to assess the Birdon proposal with the lowest risk rating when it submitted a design and components that directly affect BEB's reliability and were untested." *See* Doc. 21-2 at 18.

Even assuming Kvichak's argument is meritorious, it is untimely.

Kvichak's protest relies heavily, indeed almost entirely, on the language in sections A.2 and M.8.3 of the solicitation. These sections, however, conflict with section M.8.4, which of course immediately follows M.8.3, and reads: "Proposed corrective actions or design changes which are either untested or partially tested may increase risk." AR at 1389.

Kvichak has offered no plausible reconciliation of these provisions that militate in its favor, and the court finds that the solicitation contains a patent ambiguity. As the Federal Circuit has noted, "[a] patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties." *Stratos Mobile Networks, USA, LLC v. United States*, 213 F.3d 1375, 1381 (Fed. Cir. 2000). The operative word in the first two provisions is "will," while the operative word in the competing provision

is "may." The mandatory versus permissive nature of these statements places them in direct and patent conflict.

When a solicitation contains such an ambiguity, the Federal Circuit has recognized what is known as the doctrine of patent ambiguity. "Under the doctrine, where a government solicitation contains a patent ambiguity, the government contractor has 'a duty to seek clarification from the government, and its failure to do so precludes acceptance of its interpretation' in a subsequent action against the government." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (citing *Stratos*, 213 F.3d at 1381).

As the Circuit has explained, the doctrine:

> was established to prevent contractors from taking advantage of the government, protect other bidders by assuring that all bidders bid on the same specifications, and materially aid the administration of government contracts by requiring that ambiguities be raised before the contract is bid, thus avoiding costly litigation after the fact.

*Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1580 (Fed. Cir. 1993). Because Kvichak did not challenge the patent ambiguity prior to award, it cannot mount a protest on the basis of the mandatory language in sections A.2 and M.8.3 of the solicitation at this stage.

### C.   Fair Application of the Solicitation Criteria

Patent ambiguity or no, however, the requirements of a solicitation must be applied equally to all bidders. 48 CFR § 1.602-2(b) (contracting officers must "[e]nsure that contractors receive impartial, fair, and equitable treatment"); *Hamilton Sundstrand Power Sys., Inc. v. United States*, 75 Fed. Cl. 512, 516 (2007) (a contracting agency "must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria") (citing *Banknote Corp. of America v. United States*, 56 Fed. Cl. 377, 384 (2003), *aff'd* 365 F.3d 1345 (Fed. Cir. 2004)). *See also* 48 C.F.R. § 1.102-2(c)(3) ("All contractors and prospective contractors shall be treated fairly and impartially but need not be treated the same."). Kvichak points to several instances in which it alleges it was unfairly treated differently than Birdon, in violation of this principle.

### 1. Unfairness in evaluating reliability

Kvichak claims that the different reliability ratings resulted from the government's application of different standards to the proposed design changes submitted by Kvichak and Birdon:

> [T]he SSA failed to assess any increased risk to Birdon's proposal as a result of the untested design changes that directly affected reliability and were made by Birdon to correct reliability failures and based his award decision on those untested changes while finding the tested changes proposed by Kvichak to be risky because the changes had been tested, but not on an integrated water jet.

Doc. 21-2 at 20. "Simply stated, Kvichak's proposal was held to a different standard and evaluation process than Birdon's proposal." Doc. 21-2 at 19. This claim does nothing more than recast Kvichak's argument that the government violated the terms of the solicitation by failing to penalize Birdon when it did not submit testing data on its hydraulic system, which it argues was required under the terms of the solicitation. For the reasons stated above, Kvichak has waived the right to make this argument.

Even if Kvichak had not waived this argument, however, the fact that the government believed that test data in a representative environment was warranted with regard to Kvichak's proposal, but not Birdon's, does not necessarily indicate disparate treatment. *NCL Logistics Co. v. United States*, 109 Fed. Cl. 596, 627 (2013) (finding that plaintiff's disparate treatment argument failed because the awardee and the protestor had different past performance records).

### 2. Unfairness in evaluating other technical factors

In addition to challenging the fairness of the evaluation process with regard to the reliability rating, Kvichak claims that the government did not equitably assess the conventional rafting speed and forward top speed technical factors. Doc. 21-2 at 21-22. The solicitation required a threshold rafting speed of 6 feet per second, and set an objective rafting speed of 8 feet per second. AR at 233. Kvichak argues that it was improper for the government to rate its proposal as "good" when it achieved 90% of the objective rafting speed (7.2 feet/second), while rating Birdon's proposal as "outstanding" when it achieved 96% of the

objective rafting speed (7.7 feet/second). *See* Doc. 21-2 at 21. According to Kvichak, the 6% variance did not justify the different adjectival scores.[2]

Kvichak alleges that the disparate treatment is further demonstrated by comparing the conventional rafting speed ratings with the forward top speed ratings. *See id.* The government rated Kvichak's forward top speed as "outstanding" when its BEB achieved 24 knots, and rated Birdon's forward top speed as "good" at a 25% lower speed of 18 knots. *See id.* at 21-22. What Kvichak seems to suggest is that the government was lenient with Birdon, giving it a "good" score when its top speed was 25% lower than Kvichak's, while being less generous with Kvichak, giving it a "good" score when its rafting speed was only 6% lower than Birdon's.

There are two significant problems with Kvichak's position. First, Kvichak has presented no logical basis for crediting such a simplistic comparison of rafting speed percentages with top speed percentages. Because Kvichak has made no effort to explain why this comparison has any value, it appears to the court that Kvichak has an apples and oranges problem.

Perhaps more importantly, the conclusion that Kvichak asks the court to draw wades far too deeply into the technical aspects of the proposals. Kvichak does not claim that the agency used incorrect or incomplete information in assessing the rafting speed and top speed factors; rather, it challenges the technical judgment the agency used to arrive at the ultimately assigned adjectival ratings. *See* Doc. 21-2 at 21-22; Doc. 27 at 17. But the court's role is to determine whether the agency's actions were arbitrary, not whether they were technically correct. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (stating that technical ranking decisions are "the minutiae of the procurement process . . ., which involve discretionary determinations of procurement officials that a court will not second guess"); *Cube Corp. v. United States*, 46 Fed. Cl. 368, 386 (2005) (noting that "the determination of the relative desirability and technical adequacy of proposals is primarily a matter of agency discretion").

---

[2] Kvichak also claims that the government's evaluation of the rafting speed and top speed factors was inconsistent with the solicitation's provision for proportional credit, which states: "For proposed performance between the threshold and objective, proportional extra credit may be given to the extent that it benefits the Government." AR at 1389 § M.8.8. *See* Doc. 21-2 at 21; Doc. 27 at 17. Kvichak does not support its claim with any substantive argument about how the proportional credit provision is meant to work or how it was allegedly misapplied. The court will not attempt to fill in the blanks.

Disagreement with the agency's decision is not enough for Kvichak to prevail. *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 384 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004) (noting that "naked claims [of disagreement], no matter how vigorous, fall far short of meeting the heavy burden of demonstrating that the findings in question were the product of an irrational process and hence were arbitrary and capricious"); *Femme Comp. Inc. v. United States*, 83 Fed. Cl. 704, 740 (2008)("A protester's mere disagreement with an evaluation does not provide an adequate basis to overturn the agency's decision.").

Here, the record demonstrates that the agency reviewed and analyzed the technical aspects of each proposal in depth before making its decision with regard to the rafting speed and top speed ratings. *See* AR at 5001-5008 (final evaluation of Birdon's conventional rafting speed proposal); AR at 5009-5016 (final evaluation of Birdon's forward top speed proposal); AR at 5818-5825 (final evaluation of Kvichak's conventional rafting speed proposal); AR at 5826-5832 (final evaluation of Kvichak's forward top speed proposal). Each evaluation includes a review of the relevant solicitation provisions, a description of the offeror's proposal, a narrative supporting the adjectival rating, and a summary that designates the rating and lists the proposal's strengths and weaknesses. *See id.*

The agency then made a detailed comparison between Birdon's and Kvichak's proposals. *See* AR at 319-325. The SSAC found "meaningful distinctions" between the two proposals with regard to both conventional rafting speed and forward top speed. *See* AR at 322. In a reasoned conclusion, the SSAC explained:

> Birdon offers the Government a 7.7 fps Conventional Rafting Speed when compared to [Kvichak's] 7.2 fps. This extra 0.5 fps is substantial as the difference in thrust equates to approximately XXXX XXX of additional thrust per BEB which has significant operational implications. This additional thrust allows for better control of bays during rafting and allows for rafting in higher speed currents. While [Kvichak] offers the Government the advantage of 24 knots when compared to Birdon's 18 knots in Forward Top Speed, the least important subfactor under Technical, the significant advantages offered by Birdon's very low risk that it will meet the Reliability requirements combined with the additional thrust in Conventional Rafting Speed results in a better value to the Government and merits payment of the premium price.

10

AR at 324-325. The Source Selection Decision Document, in which the agency formally chose Birdon's proposal, explicitly agreed with the SSAC's analysis and included additional discussion of the relative merits of the proposals. *See* AR at 301-305. Kvichak has given the court no reason to question the agency's proficiency to make such technical determinations. In fact, in its motion, Kvichak notes that the source selection panels were comprised of "technically qualified individuals." *See* Doc. 21-2 at 7. The thorough discussion of each proposal, and the comparison made between Kvichak's and Birdon's submissions, evinces a rational basis for the agency's ratings.

Because Kvichak has failed to show that the agency acted arbitrarily, abused its discretion, or violated any applicable statutes or regulations while rating the rafting speed and top speed factors, the court need not consider whether Kvichak was prejudiced by the agency's actions. *See Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005) (explaining that the court only conducts a prejudice analysis if it finds the government's actions were arbitrary or contrary to law).

Kvichak's motion for judgment on the administrative record, *see* Doc. 21, is **DENIED**; the government's motion for judgment on the administrative record, *see* Doc. 23, is **GRANTED**; and Birdon's motion for judgment on the administrative record, *see* Doc. 24, is **GRANTED**.

IV. **MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIONS**

Kvichak has also asked the court to grant both preliminary and permanent injunctions "enjoining Defendants, their officers, agents, employees and representatives from performance of the contract" awarded to Birdon pursuant to the solicitation. Doc. 2 at 1.

The court must consider four factors to determine whether permanent injunctive relief is appropriate:

> (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

*PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success

11

on the merits rather than actual success." *See id.* at 1229 (quoting *Amoco Prod. Co. v. Vill. Of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987)).

Because Kvichak has not succeeded on the merits of its case, neither preliminary nor permanent injunctive relief is appropriate.

Kvichak's motion for preliminary and permanent injunctive relief, *see* Doc. 2, is, therefore, **DENIED**.


In accordance with the reasoning in this opinion, the clerk is directed to enter judgment dismissing the case.

**SO ORDERED.**

s/ James F. Merow  
James F. Merow  
Senior Judge